Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff’s intestate was a seaman on the ill-fated U. S. S. Conestoga, which sailed on March 25, 1921, from San Francisco for Pearl Harbor, Territory of Hawaii, en route to Samoa. From that date nothing has been heard of the vessel. Alleging that under the authority of the statute, section 287, Revised Statutes, the Secretary of the Navy fixed the date of the loss of the vessel as of June 30, 1921, and that the Comptroller General on February 7, 1924, decided that the members of the crew of the Gonesfoga should be allowed pay to April 30, 1921, and made settlement accordingly with plaintiff, the petition claims an additional sum for pay due the intestate from May 1 to June 30, 1921, the date of loss alleged to have been fixed by the Secretary. A similar question to that here presented was before this court in the Quinn case, 58 C. Cls. 481, involving a seaman on the same vessel, U. S. S. Conestoga, and it was held that Quinn could recover for the period in question here. The conclusion there reached is vigorously assailed by *819 the Government, notwithstanding the fact that no appeal -was taken from the judgment. If, however, a different •conclusion should have been reached in the Quinn case the •court would not be justified in extending the error in another case. And it is proper to say that the question upon which it seems the case must be decided was not mentioned in the Quinn case and has not been presented by the Government in either that or the instant case.
The statute with which we are concerned is embodied in sections 286, 287, 288, 289, and 274, Eevised Statutes, which are taken from the act of July 4, 1864, 13 Stat. 389. It is apparently conceded by both parties that the rights involved in the suit must be predicated on this statute, the point of divergence being that plaintiff claims that the Secretary of the Navy may determine the date of loss, and the Government insisting that the date shall be as determined by the accounting officers. (The statute provides “ that the proper accounting officers of the Treasury are authorized, under the direction of the Secretary of the Navy,” in settling the accounts of seamen borne on the books of a naval vessel that has been wrecked, or “ unheard from so long that her wreck may be presumed,” or lost with the rolls and papers necessary to a regular and exact settlement of such accounts, to fix a day when such wreck or loss shall be taken to have occurred. By another section the proper accounting •officers are authorized in settling "the accounts of seamen •on board a naval vessel “ sunk or otherwise destroyed,” together with rolls and papers necessary to the exact ascertainment of the accounts, to assume the last quarterly return of the paymaster of the vessel as a basis for the computation of credits to the date of such loss “ if there be no official •evidence to the contrary.” And where there is no such -quarterly return the accounting officers are “ authorized to .adjust and settle said accounts on principles of equity and justice,” and “ to allow and pay to each person on the vessel so sunk or destroyed a sum of not exceeding $60 as -compensation for loss of his personal effects.”
Section 3 of the act authorizes the second comptroller to prescribe rules under which payments may be made to the *820 widow, child, or other relative of the seaman. A question that this enactment presents is one of jurisdiction. It is clear that it confers authority on the accounting officers to make settlements which otherwise could not be made at all. In order to do this a day must be fixed when the loss of the vessel shall be taken to have occurred. Then, because of the loss of rolls and papers, making an exact ascertainment of the accounts impossible, the accounting officers may assume the paymaster’s last quarterly return; but if there be no such return, the accounts may be settled on principles of equity and justice. In the instant case it appears that the Conestoga was never heard from after sailing from San Francisco. It does not appear whether there was a “ last quarterly return,” and in its absence the settlement authorized to be made is on principles of equity and justice.. No question is made in the instant case upon what should be paid the seaman’s representative in case plaintiff is entitled to recover, the amount being ascertained by an extension to June 30 of the basis for computation ■ adopted, by the accounting office in making its settlement. But while the question of difference as presented in this case turns upon whether the authority of the accounting officers in the matter of the date of loss is independent of or controlled in any degree by the judgment of the Secretary, the whole of the enactment must be considered in determining the intention of Congress and the question of the court’s jurisdiction.
The act does not in terms confer authority on any tribunal other than that mentioned, and if the court has authority to proceed its power in that regard must rest upon the grant of power to it to hear and determine claims founded upon any law of Congress. Broad as the jurisdiction thus conferred appears to be, which, as was said by Chief Justice Nott in Foster’s case, 32 C. Cls. 170, 184, “at first sight seems to include every claim created by statute,” it was, as he adds, held at an early date that the provision is not so extensive as to include claims for the ascertainment of which a specific jurisdiction or tribunal has been erected. The principle as stated in Babcock’s case, 250 U. S. 328, *821 331, is that where a statute creates a right and provides a special remedy that remedy is exclusive. In elaboration of the rule thus stated the opinion in the Babcock case points out that where the decision of the special tribunal involves no disputed question of fact and the denial of compensation is rested wholly upon the construction of the act, the jurisdiction of the Court of Claims to review the decision may not be excluded, citing the Medbury case, 173 U. S. 492, 498, the McLean case, 226 U. S. 374, and others. In •the McLean case 'this court followed “ the broad principle declared in Medbury's case,” and held that there were essentially no disputed questions of fact before the accounting •officers; that the jurisdictional act carried a plain and simple direction to them to settle and adjust all back pay due the officer, and that the duties thus imposed were purely administrative. See McLean case, 45 C. Cls. 95, 99, 100. The Supreme Court took the same view. But in the instant case the main difference between the parties is a question of fact and not only so but as to who has the right to determine that fact. The plaintiff says the Secretary found the date of loss, and the reply is made that the comptroller found a different date.
The Government now insists that the proper rule for finding the date is that stated in Oppenheimer v. Leo Wolfe, 3 Sandf. Ch. 571, 578, a rule that was not adopted by the accounting officers and if adopted by the court would lead to still another or third date and thus force the conclusion that the accounting office and the Secretary’s supposed action were both wrong in the vital element of the date of loss. This •confusion would, however, be minimized if the conclusion be that the Secretary’s finding of the date is controlling alike on the accounting officers and the court. But the determination of the date does not constitute all of the authority given by the act. It prescribes what may be said to be a rule of ■evidence according to which a settlement of the accounts by those authorized to make it may be made. The last quarterly return of the paymaster may be used, which, manifestly, would have no probative effect, except the act authorizes its use as a basis for computing credits, and in the ab *822 sence of this the settlement may be made on “ principles of equity and justice.” Certainly this is a distinct authority conferred on the accounting officers, and there is nothing in the context that implies an intention that this power can be exercised by any other tribunal.
The elements entering into the authorized settlement are not definitely fixed by law and must be found under the rules or methods provided. The salary of the seaman may be known, but the “ credits ” to be given against this salary are to be ascertained. The act reposes this in the judgment of accounting officers, and in our judgment it provides a special tribunal to carry into effect its purposes. This being the case, there is no room for the exercise of jurisdiction by the Court of Claims. See Babcock case, supra, McLean case, and other cases supra, D. M. Ferry & Co. case, 85 Fed. 550, 556. While the court reluctantly comes to this conclusion because of its different ruling in an entirely similar case, it must refuse to follow that decision when it concludes that it has no jurisdiction of the case. The facts in the instant case tend to support the conclusion at which we have arrived. They do not show that any such action was taken as is apparently contemplated by the act; that is to say, there is nothing to show that the Secretary asked the accounting officers to fix a stated date or that these officers sought the Secretary’s direction or opinion in that regard. The only evidence adduced is a letter which the Secretary addressed to the Bureau of Navigation to the effect that the vessel was “ considered to have been lost with all on board, detached from duty as station tug, Samoa, and will be considered as placed out of commission and stricken from.the Navy list as of June 80, 1921.” Whether this letter was merely an authority to the bureau to treat the vessel as out of commission and to be stricken from the Navy list or was intended to fix a date upon which settlements could be made with seamen lost with the vessel does not appear, but it does show that it was not directed to the accounting officers. It can not be said to be a compliance with sections 286 and 287. If, acting independently, the accounting officers fixed a date and made settlements accordingly, that course would not author *823 ize the court to fix another date, since the act does not confer any such power upon the court. The petition should be dismissed. And it is so ordered.
Graham, Judge; Hay, Judge; DowNey, Judge; and Booth, Judge, concur.