## YESKEL SUPPLY CO. v. UNITED STATES.
### No. 4794.

Circuit Court of Appeals, Third Circuit.

Aug. 18, 1932.

Rehearing Denied Sept. 28, 1932.

Louis A. Fast, of Newark, N. J., for appellant.

Phillip Forman, U. S. Atty., of Trenton, N. J., and Samuel Cohen, of Newark, N. J.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below the United States, acting by the United States district attorney, filed a libel to forfeit personal property therein described, seized at 317–333 Doremus avenue, Newark, N. J. It was alleged these articles were found in a distillery, and were in the possession of one who suffered or permitted an unlawful distillery to be there operated. The United States claimed forfeiture by virtue of R. S. § 3281 (26 USCA §§ 193, 306). To this libel the Yeskel Supply Company (hereafter called Yeskel) made answer, admitting a seizure of the property and possession thereof by the government. It denied the seizure was legal, and alleged the deputy prohibition administrator was without power to file the libel. On jury trial, the verdict was for the government, and the appeal is by Yeskel.

The proofs in the case tended to show the premises consisted of a long building under one roof and divided into sections connected by doorways. The front part of the building was used by Yeskel in the bag business. The rear section was used as a distillery. The distillery was connected by an electric buzzer system to the front part of the building used by Yeskel and extending also into the boiler room which furnished heat for the entire building. In the distillery were 20,000 gallons of finished alcohol, 192 proof, and two 10,000-gallon stills in operation and no certificate of registration. There were also twenty fermenting vats with capacity from ten to sixteen thousand gallons each.

About 4 o'clock in the afternoon of September 26, 1931, a prohibition agent passing along the street in front of the Yeskel building detected a strong odor of fermenting mash, which, by experience, he knew came from alcohol as it was being manufactured. The officer was "spotted by a lookout," who was in the Yeskel front part of the building. The lookout followed the officer, who, seeing he was spotted, passed on. About 9 o'clock that evening he returned with three other officers. One of the officers also detected a strong smell of hot alcohol and traced it to the distillery. He looked through a hole in a rear window, saw lights and men moving around, heard a can fall, and smelled the hot alcohol odor coming out. Another agent testified to detecting the hot alcohol smell and its leading to the distillery. On entry, the officers found the articles above described; open passageways between all sections; a buzzer system and an electric lighting system connecting all parts of the building; a boiler furnishing steam for the whole building; a watchman in the Yeskel portion who came out and gave orders to the distillery men; the bags in the Yeskel part piled in zigzag walls, making a zigzag path leading to the opening into the distillery. Later on, William Yeskel, an officer of the company, came to the plant. He was unable to give any explanation of the buzzer system, and

said to the officer, "Can't you forget this secret pathway leading into the still." Yeskel claimed he had neither knowledge of, nor part in, the distillery, and that he had leased that part of the building some time previously to another party, and he did not know it was being used as a distillery.

Having, by his own statement, no possession or right of possession to the distillery section, it is clear no constitutional right of his was violated by the entry of the officers. And, as to the entry of the officers into the distillery section, we are clear the information they had both by sight and smell was such as to satisfy a reasonable and careful officer that the law was being violated, and as officers of the law they had the right to enter the building and ascertain whether the law was being violated. There was more than an odor—there was a hot odor characteristic of distilling going on—men at work, noise of a dropping can or vessel. The court below committed no error in holding the search and seizure were legal. In that regard this court in Feitler v. U. S., 34 F.(2d) 30, 31, said: "When an odor of liquor emanates from a warehouse—not a bonded warehouse and not one operating under a permit—and when it emanates on a second occasion, it is not unreasonable for one, charged with a duty, to use and in a measure rely upon his sense of smell as in other cases he may rely upon his sense of sight or taste. McBride v. U. S. (C. C. A.) 284 F. 416; Id., 261 U. S. 614, 43 S. Ct. 359, 67 L. Ed. 827; Lee Kwong Nom v. United States (C. C. A.) 20 F.(2d) 470."

The next question is, Were the proceedings rightly brought? In view of the provisions of R. S. §,3281 (26 USCA §§ 193, 306), and the case of United States v. One Ford Coupé, 272 U. S. 321, 47 S. Ct. 154, 71 L. Ed. 279, 47 A. L. R. 1025, we hold the court was right in refusing to dismiss the libel as prayed for in the answer. Finding no error, the decree below is affirmed.